PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
150 South Los Robles Avenue, Suite 660
Pasadena, California 91101
Telephone No. (818) 545-1925

Attorneys for Specially Appearing Defendant
Sheriff Alex Villanueva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF LOS ANGELES COUNTY WHO ARE BEING PENALLY CONFINED IN PRE-TRIAL DETENTION BECAUSE OF AND DEPENDENT ON THEIR INABILITY TO PAY BAIL, BY MARK MUNOZ, DANIEL SHANNON, AND DEONDRE SMITH,<br><br>Plaintiffs,<br><br>vs.<br><br>ALEJANDRO VILLANUEVA, and TEN UNKNOWN, NAMED DEFENDANTS, 1-100,<br><br>Defendants. | Case No. 2:22-cv-02538-DMG-JEM<br><br>Honorable Dolly M. Gee<br><br>**DECLARATIONS OF GREG SIVARD, DAVID GRKINICH AND ROEL GARCIA IN SUPPORT OF SPECIALLY APPEARING DEFENDANT SHERIFF ALEX VILLANUEVA'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>*[Opposition, Evidentiary Objections, and Request for Judicial Notice filed concurrently herewith]*<br><br>Date: May 27, 2022<br>Time: 10 a.m.<br>Ctrm.: 8C |

1

# DECLARATION OF GREG SIVARD

I, Greg Sivard, declare as follows:

1. The following facts are within my personal knowledge, except those matters stated on information and belief and, as to those matters, I believe them to be true. If so called, I could and would testify competently thereto.

2. I am currently employed by the Los Angeles County Sheriff's Department ("LASD" or "Sheriff's Department") and have been so for employed for the last 37 years. I am presently assigned as the Records Manager for the Inmate Reception Center ("IRC").

3. The Records Unit of IRC is responsible for processing and maintaining all booking and release records (among others) for inmates processed into and out of the Los Angeles County jail system. Through my assignment as the Records Manager and prior positions I have had at IRC in the Records Unit, I am very familiar with LASD's policies, procedures, and practices associated with respect to the operation of IRC including, without limitation, the methods and associated procedures used to calculate inmate release dates and all of the various criteria that can impact that process. In addition, I am familiar with the LASD's record keeping at IRC as it relates to booking and release processing. Finally, my experience extends to the operation and functions of the LASD's Automated Justice Information System ("AJIS") and the Replicated Automated Jail Information System, which are the principal computer systems used to process inmate releases and maintain historical data regarding these processes.

4. I am informed and believe that Plaintiffs in this matter have filed a Motion for a Preliminary Injunction ("Plaintiffs' Motion") against the Department based on allegations that they, and other inmates in County jail, are being detained solely because they cannot afford to post bail in violation of their constitutional rights. I offer this declaration to provide details of the Plaintiffs' incarceration

history as it relates to their claims; however, it is critical to note that the Sheriff's Department does not, on its own initiative, *set* an arrestee's bail, nor does the LASD have any ability to deviate from the pre-determined bail amounts designated for each criminal charge. Instead, prior to arraignment, the LASD (and law enforcement agencies throughout the County of Los Angeles), as required by State law, follows the judicially approved Bail Schedules, which I understand are being submitted to the Court in another declaration in this matter.

5. I have reviewed information maintained by the IRC regarding the individuals listed below. The LASD, and specifically, IRC, maintains records regarding all inmates in County jail, including information related to their booking, release, criminal charges, and bail as part of the regular course of operations. Some of this information is maintained in electronic form (in the AJIS and RAJIS systems), and other information is maintained in an inmate's "Booking Jacket," which is a file folder specific to each inmate. Details regarding the Plaintiffs are as follows:

> A) For Deondre Smith, he was arrested by the Signal Hill Police Department on November 3, 2021 based on robbery and assault charges. He was arraigned on November 5, 2021, and his bail was initially set at $105,000 for his arrest charge. In addition, Mr. Smith also had a "no bail" probation violation hold. Mr. Smith was released from Sheriff's custody on April 22, 2022.
>
> A true and correct copy of his Booking Jacket (with certain personal information redacted) is attached hereto as as Exhibit "A."
>
> B) For Daniel Shannon, he was arrested by the Los Angeles Police Department, West Los Angeles Division, on June 24, 2021 based on a charge of elder abuse likely to cause harm or death. Mr. Shannon was in the custody of the LAPD until June 28, 2021. IRC records indicate that

3

|   |   |
|---|---|
| 1 | Mr. Shannon also had an existing charge under Penal Code Section |
| 2 | 245(A)(1) (for assault with a deadly weapon).  Mr. Shannon posted bond |
| 3 | on the elder abuse charge on December 27, 2021 and he was released |
| 4 | from Sheriff's custody, and transferred to the custody of the California |
| 5 | Department of Corrections and Rehabilitation on April 22, 2022. |

A true and correct copy of his Booking Jacket (with certain personal information redacted) is attached hereto as Exhibit "B."

    C) For Mark Munoz, he was arrested by the Los Angeles Police Department, Harbor Division, on October 13, 2021 based on a charge of arson (Penal Code Section 451(D)) and possession of drug paraphernalia (Health and Safety Code Section 11364(A)).  He was arraigned on October 15, 2021, before he was LASD custody, and he was remanded to Department custody with his bail set at $150,000.

A true and correct copy of his Booking Jacket (with certain personal information redacted) is attached hereto as Exhibit "C".

    6.    The records of the LASD reflect that with respect to the three Plaintiffs, none of them had the amount of their bail determined or imposed by the Sheriff's Department.  Instead, the amount of their bail was imposed by either the criminal court itself, or through another law enforcement agency.

//

//

//

//

//

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 5th day of May, 2022, at Los Angeles, California.

_____
Greg Siward

# DECLARATION OF DAVID GRKINICH

I, David Grkinich, declare as follows:

1. The facts set forth herein are based on my personal knowledge or, as specified, upon my information and belief, based on official acts and writings. If called upon as a witness, I could and would testify competently to the facts contained herein under oath.

2. I offer this declaration in support of the opposition by Specially Appearing Defendant Alex Villanueva to Plaintiffs' Motion for a Preliminary Injunction.

3. I am a Bureau Chief of the Probation Department of the County of Los Angeles. I began employment with the County of Los Angeles in 1990, and I have held the rank of Bureau Chief since 2013. Since December 2021, my position has been to oversee the Probation Department's Internal Affairs and Staff Training Operations. From 2018 to 2021, my position was to oversee the Probation Department's Pretrial Services Bureau and to assist with the Adult Field operations. Those duties included responding to issues concerning bail reform, including the operation and planning of pilot programs concerning pretrial detention with the Los Angeles Superior Court and other criminal justice stakeholders.

4. I am informed and believe that the Plaintiffs in this matter allege that within the Los Angeles County jails are between 14,000 and 17,000 inmates who are being detained solely because they cannot afford to post bail, in violation of their constitutional rights. For the reasons set forth below, I respectfully disagree with Plaintiffs' allegations.

5. California has a complex statutory framework with respect to bail. In short, a person arrested and charged with a non-capital criminal offense in California has a constitutional right to be released on bail except in certain

circumstances involving threats to public safety. The California Constitution requires that judges give primary consideration to public safety and the safety of the victim when making bail decisions. Judges must also consider relevant factors such as the seriousness of the charge, the person's prior criminal record, and the probability the person will show up to court.

6. Under the California Penal Code, each county superior court must create and adopt, on a yearly basis, bail schedules for all felonies and misdemeanors subject to bail. These schedules set the presumptive amount of bail that a person can post in order to be released from custody in accordance with state law. Local law enforcement, including sheriffs, does not have discretion to deviate from the court's bail schedule.

7. A person can post bail in California by paying a non-refundable fee (typically 10% of the bail amount) to a private bail agent, who must pay the full amount of bail to the court if the person fails to appear at the next court date. Alternately, the person can deposit the full bail amount directly with the court (in cash or U.S. or California bonds) or provide the court as security equity in real property equal to twice the bail amount.

8. In Los Angeles Superior Court specifically, the Superior Court sets the presumptive bail amounts in these schedules (and reviews and revises them annually) and law enforcement has <u>no discretion</u> to modify those amounts. According to the Court's Local Rule 8.3:

    a. Bail Schedule. The Supervising Judge shall appoint a Bail Committee within the Criminal Division. The Bail Committee must prepare and annually revise a Uniform Countywide Misdemeanor/Infraction Bail Schedule and a Uniform Countywide Felony Bail Schedule. In preparing and revising the Felony Bail Schedule, the Bail Committee must consider the factors specified in Penal Code section 1269b(e). The preparation

7

and distribution of a bail schedule must comply with the requirements of Penal Code section 1269b(f). The Bail Committee must submit a bail schedule to the Executive Committee, and it will be deemed adopted by the judges of the court when approved by the Executive Committee. A bail schedule will be effective on the date adopted or as specified by the Executive Committee. …

b. Bail Schedule Deviation During Non-Court Hours. All pre-arraignment requests to increase or decrease bail, or for an own-recognizance release, must be made through the Bail Deviation Program of the Los Angeles County Probation Department. … A defendant or defendant's representative may make a request to decrease bail or for an own-recognizance release by telephoning (213) 351-0311 between 6:30 a.m. and midnight.

c. Information to Support a Bail Deviation Request. The Bail Deviation Program may request certain information in evaluating a bail deviation request, including, but not limited to: (1) the name, address, and telephone number of the person seeking the deviation and relationship to the defendant; (2) name and booking number of the defendant; (3) charge(s) on which the defendant is being held; (4) date and time of arrest; (5) address and telephone number of the jail or station at which the defendant is being held; (6) date, time and court location for the defendant's arraignment; (7) the defendant's age, marital status, length of residence in the community, employment history, and community ties; (8) the defendant's prior criminal record; and (9) any facts justifying the requested deviation.

9. Despite the language of the Superior Court's Local Rule, in practice, since the implementation of the State of California's Pretrial Risk Evaluation Program ("PREP") discussed below, the bail deviation program has been operating 24 hours a day, seven days a week.

10. Attached hereto as Exhibits "D" and "E" are true and correct copies of the Superior Court's 2022 Felony Bail Schedule and the Superior Court's 2022 Bail Schedule for Infractions and Misdemeanors.

11. Regardless of the Schedules set forth above, due to the COVID-19 pandemic, on October 20, 2020, the Los Angeles Superior Court issued its Third Emergency Bail Schedule Order ("EBSO") which is in effect until further notice of the Court. The EBSO states that "the bail for all infraction, misdemeanor, and felony offenses will be set at $0, with the exception of the offenses listed [in the Order]." Attached hereto as Exhibit "F" is a true and correct copy of the EBSO. This means that unless an arrestee is charged with a "serious or violent" crime, they are cited and released, and do not go to County jail. Therefore, most people are released by the arresting agency shortly after arrest.

12. In recent years there has been a national movement to reform bail systems. The County of Los Angeles was an earlier player in this process. For example, on or about March 8, 2017, the Los Angeles County Board of Supervisors unanimously voted to initiate the research and analysis of pretrial practices. As a result, the County formed a Bail Reform Team made up of numerous County departments, national experts, and a wide range of community stakeholders to develop a multifaceted program to ensure greater equity in the pretrial release system while also protecting public safety.

13. Moreover, the Superior Court of the County of Los Angeles applied to, and in August 2019 was awarded funds from, the Judicial Council of California to implement the PREP pilot program to expand and expedite pretrial releases. Attached hereto as Exhibit "G" is a true and correct copy of the

Memorandum of Understanding on Pretrial Assessment Interview Confidentiality for the Los Angeles Pretrial Release Pilot Program between the Probation Department, District Attorney's Office, Office of the Public Defender, The Alternate Public Defender, the Los Angeles City Attorney, and the Los Angeles County Bar Association Indigent Criminal Defense Appointments Program. The pilot program began at the Clara Shortridge Foltz Criminal Justice Center (the County's largest arraignment court, in downtown Los Angeles), but has subsequently been expanded to the Antelope Valley (at the Lancaster courthouse) as well as South Los Angeles (at the Compton courthouse). In addition, while this program was originally planned to end in June 2021, it is still operating as a pilot until June 2022. The State has committed to continued funding of this program and no substantive changes to the program are anticipated.

14. Also, attached hereto as Exhibit "H" is a true and correct copy of the Memorandum of Agreement between the Superior Court of California, County of Los Angeles and the County of Los Angeles for the Los Angeles Pretrial Release Pilot Program.

15. PREP, which was implemented on March 23, 2020, is a two-step program:

    a. Step One: <u>all</u> new eligible arrestees throughout Los Angeles County are automatically evaluated for pre-arraignment release by a Duty Magistrate Judge approximately four hours after booking. Only those arrested with Penal Code § 1270.1 serious and violent charges or who have Penal Code § 1319.5 pre-arraignment release exclusions are not eligible, as well as defendants detained for other reasons such as probation violations.

    b. Step Two: arrestees who are not cite released by law enforcement or released pre-arraignment by a judge and who are scheduled for

arraignment will be interviewed by the Probation Department for pretrial release with possible terms and conditions as ordered by the arraignment judge.

16. Attached hereto as Exhibit "I" is a true and correct copy of the Judicial Council of California's January 1, 2021 report to the California Legislature regarding its Pretrial Pilot Program.

17. In addition to the above, arrestees who have not yet appeared in court may request to participate in the Bail Deviation Program ("BD Program"), a free service operated by the Probation Department's Pretrial Services Bureau ("Pretrial Services"). If eligible, Pretrial Services assesses the arrestee's suitability for bail deviation by using a risk assessment tool. Based on the information provided by Pretrial Services, the judicial officer can then reduce the arrestee's bail amount, release the arrestee on his or her own recognizance ("OR"), or otherwise act on the request for a bail adjustment.

18. Individuals who remain in custody after arrest must be taken to court within 48 hours (excluding Sundays and holidays) for arraignment. At arraignment, arrestees can participate in Pretrial Services' Own Recognizance Program ("OR Program"). Pretrial Services uses a risk assessment tool to evaluate an eligible arrestee's suitability for OR release, then provides a written report to the court. The Court makes the final decision whether or not to release the arrestee on OR.

19. In addition to an OR release, arrestees may be released by the Court into the Supervised Release Program, managed by Pretrial Services. Arrestees eligible for this program can be released on electronic monitoring (at no expense), and at pilot courts, they can also be provided services for mental health, drug and alcohol addiction, and educational needs.

20. On March 25, 2021, the California Supreme Court ruled in *In Re Humphrey*, 11 Cal.5th 135 (2021), that a criminal defendant's rights to due

process and equal protection could be violated if the trial court denied pretrial release solely because the defendant was unable to pay bail. The Court held that trial courts must consider, in addition to public safety, a defendant's ability to pay and non-monetary alternatives to money bail when setting the amount of money bail or setting conditions of release.

21. With few exceptions, people confined at the Los Angeles County jails are being held as a result of a remand order by the Superior Court, <u>after</u> they and their counsel have appeared before a state judicial officer, where they would have had the opportunity to raise issues concerning bail, including whether or not they can afford to post bail.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 6, 2022, at Los Angeles, California.

David Grkinich

## DECLARATION OF CAPTAIN ROEL GARCIA

I, Roel Garcia, declare as follows:

1. I have personal knowledge of the facts stated herein, except those stated upon information and belief and as to those matters, I believe them to be true. If called upon to testify to the matters herein, I could and would competently do so.

2. I am a sworn peace officer of the Los Angeles County Sheriff's Department ("LASD," "Department" or "Sheriff's Department"), and I have been so for more than 26 years. Over my career in law enforcement, I have worked in various capacities in the Los Angeles County jail system ("County jail"). I am presently assigned as the Captain of the Inmate Reception Center ("IRC") and the Population Management Bureau ("PMB"). The IRC is the facility within the County jail system that is responsible for the processing of male arrestees into and out of the County jail system, as well as the transfer of inmates between housing facilities. IRC's operations include, without limitation, the maintenance and storage of all inmate court records, inmate clothing, inmate property, inmate trust accounts and receiving and processing incoming inmate mail. In addition to station jail personnel, with respect to LASD arrests, IRC personnel are also involved in recording the amount of bail for arrestees prior to arraignment pursuant to the Los Angeles Superior Court Felony or Misdemeanor Bail Schedules ("Bail Schedules"). I am informed and believe that the details of the Bail Schedules, and how they are used by arresting agencies in Los Angeles County, are explained in another declaration submitted in this case.

3. I am informed and believe that the Plaintiffs in this matter allege that within the Los Angeles County jails are between 14,000 and 17,000 inmates who are being detained solely because they cannot afford to post bail, in violation of

their constitutional rights. For the reasons set forth below, I respectfully disagree with Plaintiffs' allegations.

4. Arrestees come to the IRC from a variety of places, but in most circumstances relevant here, they arrive at the IRC after being arrested by one of many law enforcement agencies in Southern California, and remanded by orders of the Superior Court. While the Sheriff's Department operates the jails, and also operates various patrol stations in Los Angeles County, there are more than 50 separate law enforcement agencies that operate within Los Angeles County. Each of these agencies, such as, for example, the Los Angeles Police Department ("LAPD"), can be involved in the process of booking an arrestee into the County jail computer system. This includes the completion of arrest paperwork, before arraignment, wherein an arrestee's bail is listed based on their criminal charge(s).[1]

5. The Sheriff's Department does not *set* an inmate's bail at any time (either pre or post arraignment), nor does the LASD have any discretion to change or deviate from the bail amounts set by the Superior Court for a criminal charge for which an arrestee is booked. Bail amounts, pre-arraignment, are dictated by the Bail Schedules. Similarly, once an arrestee is arraigned, the bail amounts for their criminal charges are dictated by the Superior Court in the remand order causing the arrestee to come into the Sheriff's custody. Basically, whether an arrestee is in Sheriff's custody (pre or post arraignment), by law, the Sheriff's Department has no ability to deviate from bail amounts prescribed by the Superior Court.

---

[1] Local law enforcement agencies have the ability to enter information into the computer systems used to book arrestees into the Los Angeles County criminal justice system. For a large percentage of arrestees, they are booked, and their information entered into relevant computer systems, before they are ever transferred to the custody of the LASD. The relevant computer systems track, among many other things, each arrestee's various criminal cases, their court dates, assigned bail amounts, security classifications, and custody movement.

14

6. Putting aside the Department's inability to deviate from either pre-determined bails amounts (per the Court's Bail Schedules) or bail amounts ordered by the Court, only a relatively small percentage of persons arrested in Los Angeles County are ever actually housed in the County jail. Meaning, for a very large percentage of arrestees, their bail amounts are largely irrelevant because they are released whether they could post bail or not. My understanding is that typically less than 30% of the total number of arrestees in Los Angeles County are ever housed in the County jail post-arrest. This is because, as explained below, there are numerous factors that limit whether an arrestee will be actually transferred to County jail after arrest, as compared to being cited and released.

7. For example, the COVID-19 pandemic dramatically impacted the County jail system and its operations, including with respect to bail, and many operational changes remain in effect today. Indeed, before the COVID-19 pandemic, in order to be housed in the County jail after booking, the subject charge had to carry a bail amount in excess of $25,000. If the subject charge carried a bail of less than $25,000, the arrestee would be released upon a promise to appear, or "cite released." In such cases and with minor exception, the arrestee would not be housed in County jail, and would never come to IRC. Since the pandemic, however, this amount has been raised by the Department to in excess of $50,000 to combat COVID-19 in the jails and increase the potential for social distancing. Here again, this means that as of the date of this declaration, if an arrestee's total bail is less than $50,000, he or she will be cite released and never housed in County jail.

//
//
//
//
//

15

8.      Along the same lines as the increase in the bail threshold for housing, on October 20, 2020, the Los Angeles Superior Court reaffirmed its "Emergency Bail Schedule Order."  With the exception of serious and violent crimes, the Emergency Bail Schedule Order requires that "the bail for all infraction, misdemeanor, and felony offenses will be set at $0…"  This means that unless an arrestee is charged with a "serious or violent" crime as determined by statute, they are cited and released, and never assigned to County jail.  Indeed, most arrestees who fall within the parameters of the Emergency Bail Schedule Order are released by the arresting agency shortly after their arrest and, more importantly here, they are released before they are ever in the custody of the Sheriff's Department.

9.      Lastly, for those arrestees who ever come to IRC, they may call (toll free) the Bail Deviation telephone number staffed by the Probation Department, who may interview them and follow up with a judicial officer as to whether the amount of their bail should be reduced or eliminated entirely.

//

//

//

//

//

//

//

//

//

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 6, 2022, at Los Angeles, California.

_____
Roel Garcia

17