STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF LOS ANGELES COUNTY WHO ARE BEING PENALLY CONFINED IN PRE-TRIAL DETENTION, *etc.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO VILLANUEVA, *et al.*, <br><br> Defendants. | 2:22-cv-02538-MWF(JEMx) <br><br> **PLAINTIFFS' REPLY ON THEIR MOTION FOR PRELIMINARY INJUNCTION** <br><br> August 29, 2022 <br> 10:00 a.m. <br> Courtroom 5A <br><br> Judge Michael W. Fitzgerald |

1

# TABLE OF CONTENTS

Pages

I. Introduction.................................................................................2

II. Plaintiffs have standing..............................................................10

III. All of defendant's arguments are irrelevant and/or without merit.................11

IV. Conclusion................................................................................27

Declaration of Stephen Yagman.........................................................29

Exhibits 1, 2, & 3 as attachments

//

i

# Cases

*Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014)........................................................... 2

*Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983)..................................................... 6

*Buffin v. City and County of San Francisco*, 2019 WL 1017537 (N.D. Cal. 03/04/2019)...................................................................................................... *passim*

*Buffin v. City and County of San Francisco*, 23 F.4th 951 (9th Cir. Jan. 13, 2022). 9

*City of Los Angeles v. Lyons*, 461 U.S. 95, 105–106 (1983) .................................... 10

*DCD v. Leighton*, 846 F.2d 526 (9th Cir. 1988)....................................................... 8

*Gerling Global Reinsurance Company of America v. Low*, 240 F.3d 739, 752 (9th Cir. 2001)................................................................................................................. 17

*Green v. Baca*, 225 F.R.D. 612 (C.D. Cal. 2005)....................................................... 7

*Guillory v. Cnty. of Orange*, 731 F.2d 1379 (9th Cir. 1984) .................................... 17

*Hart v. Baca*, 2005 WL 1168422 *1- 2 (C.D. Cal. 2005)........................................... 7

*Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 118 (9th Cir. 1999) ................................................................................................................................... 23

*Holmes Group, Inc. v. Vorado Air Circulation Systems, Inc.*, 535 U.S. 826, 841 (2002)........................................................................................................................ 9

*In re Avignone*, 26 Cal.App.5th 195, 198 (2018)....................................................... 3

*In re Brown*, 76 Cal.App. 5th 296, *1 (2022)............................................................ 8

*In re Humphrey*, 11 Cal.5th 135, 143 (2021)............................................................ 8

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, 2 F.4th 1199, 1206 (9th Cir. 2021) ...................................... 15

*Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) .......................................... 10

*Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980)............................................ 17

*Peo. of Los Angeles, etc. v. Villanueva*, 2022 WL 2189647, *3 (C.D. Cal. 2022)................................................................................................... 2, 10

*Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) .......................................... 16, 26

*Thomas v. Baca*, 514 F.Supp.2d 1201 (C.D. Cal. 2007)......................................... 26

*Timbs v. Indiana*, 139 S.Ct. 682 (02/20/19) ........................................................... 3

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ........................................................................................................... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs submit this memorandum as their reply on their preliminary injunction motion.

As this court previously held, in order to obtain a preliminary injunction, "Plaintiffs would need to make an additional evidentiary showing to demonstrate they are entitled to an injunction under . . . the reasoning in *Buffin*," *Peo. of Los Angeles, etc. v. Villanueva*, 2022 WL 2189647, *3 (C.D. Cal. 2022), and that is precisely what plaintiffs have done in their instant motion.

## I.

## INTRODUCTION: POOR PEOPLE ROTTING IN JAIL JUST BECAUSE THEY ARE POOR.

"You would put to shame the plan of the poor. But the LORD is his refuge." New American Standard Bible, Psalm 14:6.

Poor people are rotting in the Los Angeles County jail, and this court has an opportunity to do something about that. Defendant Los Angeles County Sheriff Alejandro Villanueva's response is "anywhere but here, in this Court," and "anyone but me," like the State of California. And, "not now," because plaintiffs and putative class members haven't touched all bases.[1] Plaintiffs are certain that the courts knows and understands how long it would take for the plaintiffs and class member pretrial detainees to fight this issue in Superior Court and then in the Court of Appeal, with over-worked public defenders not having the time, will, or energy to undertake the task. By the time the process would be over, plaintiffs and class members no longer would be pretrial detainees, since their cases would have been dismissed or they would be convicted criminals who no longer would be held

---

[1] Of course, the PLRA is an affirmative defense, that defendant must plead and prove, *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), and defendant hasn't proved it. Moreover, plaintiffs have filed grievances, as required by the PLRA, as a condition precedent to filing a § 1983 action. Attached hereto is defendant Villanueva's Commander of Custody Services Division, Larry A. Alva's acknowledgement of the PLRA grievance that plaintiffs' counsel filed on plaintiff Mark Munoz' behalf (and of which there are many others).

1  on bail.[2] So, the go over there and do this argument is absurd nonsense, but yet said
2  with a straight face.

3       Eighth Amendment to the U.S. Constitution provides that "Excessive bail
4  shall not be required . . . ."

5       The California Constitution provides that "Bail; release; exception for
6  certain crimes; excessive bail; recognizance . . . A person shall be released on bail
7  by sufficient sureties . . . ." *Id.* at § 12. *See In re Avignone*, 26 Cal.App.5th 195,
8  198 (2018) (abuse of discretion to increase defendant's bail in violation
9  of *Humphrey* and the Eighth Amendment and article 1, section 12 of the state
10 constitution).

11      The principles set forth in and underlying the district court's decision,
12 granting an injunction in *Buffin v. City and County of San Francisco*, 2019 WL
13 1017537 (N.D. Cal. 03/04/2019), each and all should govern the disposition of the
14 instant motion for a preliminary injunction, notwithstanding everything set forth in
15 the opposition.

16      In *Buffin*, the court based its preliminary injunction on "Plaintiffs[']
17 argu[ment] that . . . the continued use of such a [California County Superior Court's
18 bail] schedule violates the Due Process and Equal Protection clauses of the United
19 States Constitution." *Id.* at * 1. *Buffin* did not take into account the Court's 12-
20 days'-earlier decision in *Timbs v. Indiana*, 139 S.Ct. 682 (02/20/19),[3] in which it
21 held that the excessive bail provision of the Eighth Amendment's Excessive Bail
22 Clause was incorporated by reference in the Fourteenth Amendment's Due Process
23

---

24 [2] And, this factor is what renders absurd defendant's contention that plaintiffs and putative class
25 members should take a state court track; and this factor also satisfies the irreparable harm factor
   (2) of *Winter*: they almost certainly no longer would be pretrial detainees who would gain any
26 benefit from a victory in the instant action.

27 [3] It is plaintiffs' counsel's belief that until *Timbs*, no one could come into a federal court with a §
28 1983 claim attacking state cash bail laws, so that *Buffin* now is bullet proof, as is the instant
   action.

1  Clause. *Buffin* was a hotly contested matter, in which the San Francisco sheriff
2  refused to defend the San Francisco bail schedule, and in which the court permitted
3  the permissive intervention in the case to defend it a party with an enormous,
4  motivating, financial stake in the issue, the California Bail Agents Association, the
5  bail industry trade association who promotes the bail industry.[4] *Timbs* makes
6  plaintiffs' case for a preliminary injunction even stronger than was the plaintiffs'
7  case in *Buffin*. *Buffin* is on all fours with the instant matter, insofar as a preliminary
8  injunction is concerned.

9       In *Buffin*, "Ms. Buffin did not post bail because she could not afford it. . . .
10  Q. Was there an amount [or bail] that you could have afforded[?] . . . A. No."
11  Plaintiffs have submitted substantial admissible evidence by way of prisoners'
12  declarations,[5] that they and members of the putative class also cannot afford to pay
13  any cash bail.

14       The legal fact that Cal. Penal Code § 1269b requires county superior court
15  judges to draft yearly bail schedules is wholly irrelevant here, because those
16  schedules do not take account of the setting of cash bail for prisoners who simply
17  are too poor to afford to pay any cash bail.

18

19  _____

20  [4] This billion dollar industry surely fought against the injunction much more fiercely than
    California government bureaucrat attorneys would have fought, because enormous sums of
21  money were at stake for them: money they no longer can make in San Francisco. And, that
    should be the same in Los Angeles. Yet, the Los Angeles authorities who now fight against
22  plaintiffs lack the moral fiber that the San Francisco Sheriff had in refusing to fight Ms. Buffin.

23  [5] The reason that plaintiffs have not submitted timely declarations is that defendant has been
    messing with prisoner mail, delaying for long periods of time giving the clearly-marked attorney
24  mail to prisoners after it has arrived at the jail, and then delaying for long periods of time posting
    the prisoners' mail to be sent to plaintiffs' counsel herein, when prisoners provide it to deputies to
25  be mailed. For example, just yesterday, class member Travon Brooks telephoned plaintiffs'
    counsel to say that he on Aug. 10 had received papers, including his declaration for the instant
26  action, whose envelope from counsel bore a date around July 3 (of which proof later will be
    provided, when he mails back the envelope), thus causing a delay of nearly seven weeks.
27  Declaration of Stephen Yagman ("Yagman Decl."), attached hereto. Defense counsel is at once
28  complaining bitterly about the declarations plaintiffs submit, while his client is blocking access
    to the court and obstructing justice, by delaying prisoner mail.

4

As *Buffin* states, "'some people currently [are] in California jails who are safe to be released [and] are held in custody solely because they lack the financial resources for a commercial bond . . . ." *Id.* at *6. Here, all plaintiffs and putative class members fall into this now-protected category. *See* plaintiffs' and class members' declarations that are submitted. Apparently, according to the 4/15/2022 report of the Sheriff's Dept., Exh. 1, attached hereto, there is a nearly 12,000 total population in the County jail, of which around 5,000 are pretrial detainees.

*Buffin* concluded that whether California's protocols for bail are constitutional takes "strict scrutiny review" and that "the government has the burden of proof under the strict scrutiny standard." *Id.* at *7. Here, defendant government has not, and never would be able to, meet its burden of proof, as is evidenced in the opposition to the instant motion.

*Buffin* also held that "'[m]any of those in California's jails are there for no reason other than the fact that they are unable to afford money bail." *Id.* at *8. But they should not be there for no reason, and this court can do something about that.

> *Buffin* further held that,
> studies concluded that the system of money bail in the United States discriminates against indigent detainees who lack the financial resources to post bail.[34] Challenges to requiring bail from an impoverished detainee were raised in the courts as early as 1960, questioning whether freedom and liberty could be rightfully denied merely on the basis of indigence. *See Bandy v. United States*, 81 S. Ct. 197, 197–98 (1960); *see also Bandy v. United States*, 82 S. Ct. 11 (1961).
>
> 34 *See, e.g.*, Wayne H. Thomas, Jr., *Bail Reform in America* 11, 19 (1976) ("The American system of bail allows a person arrested for a criminal offense the right to purchase his release pending trial. Those who can afford the price are released; those who cannot remain in jail.... The requirement that virtually every defendant must post bail causes discrimination against defendants who are poor.").

*Id.* at 12. And,

> Driven by concerns about problems and inequities in bail practices, Congress enacted the Bail Reform Act of 1966, the stated purpose of which was "to assure that all persons, regardless of their financial status, shall not

needlessly be detained pending their appearances to answer charges ... when detention serves neither the ends of justice nor the public interest." By emphasizing nonmonetary terms of bail, Congress attempted to remediate the negative impacts experienced by defendants who were unable to pay for their pretrial release, including the adverse effect on defendants' ability to consult with counsel and prepare a defense, the financial impacts on their families, a statistically less-favorable outcome at trial and sentencing, and the fiscal burden that pretrial incarceration poses on a society at large.

*Ibid.* (footnotes omitted). Quoting *Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983), *Buffin* noted that "the State . . . may not . . . imprison a person solely because he lacked the resources to pay [a fine or restitution]." *A fortiori* and *mutatis mutandis*, here, defendant may not imprison plaintiffs and putative class members solely because they are too poor to make cash bail.

*Buffin* first concluded that "plaintiffs have established a significant deprivation, beginning with longer detention by sole reason of their indigence." *Id.* at 16 (footnote omitted), and for this reason an injunction should issue. The continuation, even for a day, of significant constitutional deprivations must be addressed by this court. The court then cited two cases that here are germane and held as follows:

> In general, relief must be narrowly tailored to address the extent of the constitutional violations found. *See Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 420 (1977) ("Once a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation.") (internal quotation marks omitted); *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995) ("[T]he nature of the ... remedy is to be determined by the nature and scope of the constitutional violation.") (internal quotation marks omitted). Accordingly, the Court will issue an injunction enjoining the Sheriff from using the Bail Schedule as a means of releasing a detainee who cannot afford the amount but will delay issuing the injunction pending briefing.

*Id.* at 24. This here is applicable, and because the injunction issue has been fully briefed, therefore, the court should issue an injunction, to release plaintiffs and class members from, in effect, a sort of debtors' prison.

6

1    The facts and law both are clear.

2    There are many thousands[6] of poor women and men held as prisoners in the

3    Los Angeles County jail system, virtually all of them on cash bail that they cannot

4    afford to pay.

5    No rational, sane, or even irrational, insane person would voluntarily remain

6    in the County jail system if she or he could afford to make bail. Yet, there they are,

7    thousands of them, because defendant Villanueva refuses to obey the clear and

8    controlling law (as apparently so too do the judges of the Los Angeles Superior

9    Court. *See* Declaration of David Grkinich, Doc. 23, previously submitted as part of

10   the opposition to a prior motion). The prisoners are there because they cannot

11   make cash bail, and the Northern District of California law and controlling

12   California law make that illegal, as in the district court's[7] disposition in the *Buffin*

13

14   _____

15   [6] *See* defendant's binding judicial admission in defendant's note 3, page two, that there are "many thousands of [Los Angeles] County jail inmates." *See also* Exh. 1 hereto.

16   [7] Defendant's mention of the Ninth Circuit case in *Buffin* is irrelevant because it held only that

17   the State of California was responsible for the attorneys' fees awarded against the defendant in

18   the district court. But it did not hold, as defendant suggests, that the State was a proper, much less indispensable, party to that action. Defense counsel's throw-away line in his footnote 3 on

19   page 12 that plaintiffs "fail[ed] to join a necessary and indispensable party," isn't supported by the Ninth Circuit disposition in *Buffin*, not even close. Defense counsel fails to set forth any

20   pinpoint, page citation in *Buffin* that stands for that contention. This same defense counsel and law firm previously was warned by Judge Dean D. Pregerson not to do this sort of thing. *See*

21   *Hart v. Baca,* 2005 WL 1168422 *1- 2 (C.D. Cal. 2005) (Judge Pregerson) ("The defense counsel cited *Wilson* for the broad proposition that § 1983 actions, having no statute of

22   limitations provision of their own, must be brought within the time specified by the forum state's

23   statute of limitations, but failed to comprehend the actual holding of the case. In the opposition, the defense counsel cited numerous pre-*Wilson* cases that the holding in *Wilson* overruled. He

24   managed not only to omit any discussion of *Wilson's* holding, but also mention of subsequent cases that complied with *Wilson.* . . . While sanctions appear appropriate under Rule 11, the

25   Court is inclined to refrain from such action this time. However, the Court strongly advises

26   defense counsel to be more careful when arguing the law in his papers. . . . Negligence in citing authority to the Court is no virtue, however; additional material transgressions will establish a

27   pattern justifying sanctions."). *See also Green v. Baca,* 225 F.R.D. 612 (C.D. Cal. 2005) (same

28   defense firm engaged in conduct that warranted sanctions in the sum of $54,375 for discovery abuses, when defense counsel first concealed, then baselessly claimed attorney client privilege for, 11,704 pages of Los Angeles Sheriff's Dept. documents, which then-Mag. Judge Margaret

case, of which defendant previously and now made no mention at all. It is common sense and, plaintiffs suggest, there is a rebuttable presumption, that no plaintiff or member of the class would chose to remain in custody if she or he could make bail. And, it is not on plaintiffs or class members to go through the bail-reduction procedures enumerated in the opposition, because it is on defendant not to detain in custody anyone who is not supposed to be in custody.

The California Supreme Court held this practice to be illegal in 2021, in *In re Humphrey*, 11 Cal.5th 135, 143 (2021), decreeing that conditioning at all release from custody solely on whether a prisoner can afford to pay bail is unconstitutional, and a person charged with a crime, whether arraigned or not, may not be detained solely because of her or his lack of resources to pay cash bail, and that a court may not make continued detention dependent on an arrestee's financial condition. The California Court of Appeal ruled consistently with that opinion. *In re Brown*, 76 Cal.App. 5th 296, *1 (2022). Contrary to defendant's quotation from *Brown*, it does not make the instant, § 1983 action a habeas proceeding, and although defendant interprets it to mean that plaintiffs herein are required to avail themselves of "this immediately available and procedurally proper avenue of relief," Opp. at 7:19-20, because it provides a "template," *id.* at 20, such is not the case: available does not mean "mandatory." The fact is that two state court proceedings would take way too long and would vitiate the "speedy" requirement of Fed. R. Civ. P. Rule 1. Template or not, plaintiffs are the masters of their

---

Nagle was forced to spend over three months reading, before she denied the privilege and ordered production of the documents and the sanction). This defense firm is a serial offender. *See also DCD v. Leighton*, 846 F.2d 526 (9th Cir. 1988) ("[C]ounsel's professional duty requires scrupulous accuracy in referring to the record . . . . Lack of diligence which impairs the deliberations of the court is sufficient [to impose discipline].").

complaint. *Holmes Group, Inc. v. Vorado Air Circulation Systems, Inc.*, 535 U.S. 826, 841 (2002) ("the plaintiff is 'the master of the complaint'").[8]

Ninth Circuit law is the same. In *Buffin v. City and County of San Francisco*, 23 F.4th 951 (9th Cir. Jan. 13, 2022),[9] the court held that "the district court enjoined the [San Francisco County] Sheriff[] . . . from enforcing the bail schedule and any other state bail determination that makes the existence or duration of pre-trial detention dependent on the detainee's ability to pay[,]" *id.* at 954, implicitly approving the district court's decision. This should end this matter. Defendant fails to address at all the *Buffin* district court decision, much less mention it, which, *inter alia*, demonstrates that a California county sheriff, and *not* the state courts, is the proper defendant against whom to seek release by way of injunction, and that injunctive relief is proper.

In that underlying, district court, case, the court held that "the [San Francisco] Sheriff's use of the [state] Bail Schedule significantly deprives plaintiffs of their fundamental right to liberty[,] . . . [and o]perational efficiency based upon a bail schedule which arbitrarily assigns bail amounts to a list of offenses without regard to any risk factors or the governmental goal of ensuring future court appearances is insufficient to justify a significant deprivation of liberty[,] . . . [so that] the Court will issue an injunction enjoining the Sheriff from using the Bail Schedule as a means of releasing a detainee who cannot afford the amount [or bail]

---

[8] In this case, a party tried to pry the case from federal court and drop-kick it into state court, as defendant does here, but were unsuccessful.

[9] Although *Buffin*, as decided by the Ninth Circuit, involved only the issue of whom was the proper party to pay the § 1988(a) attorneys' fees awarded by the district court to the prevailing plaintiffs, the Ninth Circuit necessarily approved of the injunctive relief granted to those plaintiffs, which established their prevailing-party status on which their eligibility for attorneys' fees was predicated. Had it disapproved of the district court holding, it would not have approved the fees award.

1   . . . ." *Buffin v. City and County of San Francisco*, 2019 WL 1017537, * 24

2   (N.D.Cal. 2019) (issuing injunction).

3     Yet, in the face of this abundant, controlling authority, defendant makes a

4   number of fallacious and un-meritorious, obdurate contentions in support of his

5   desire to keep his jails packed with the poor who cannot afford to pay the bails set

6   for their releases. Anyone but me, anywhere but here, are his arguments. He

7   desperately wants to keep his jails full, it is part of his *raison d'etre*. Without all of

8   those thousands of pretrial detainees in his jails, who should not be there, he would

9   be left to pursue actual, mundane law enforcement, rather than being a

10  warehouseman for the poor who had been accused of crimes.

11  ## II.

12  ## PLAINTIFFS HAVE STANDING.

13    The court's May 27, 2022 order established that plaintiff Munoz has

14  standing: "Generally, to have standing to seek an injunction, there must be a

15  chance that the plaintiff will face the complained-of conduct in the future. *See City*

16  *of Los Angeles v. Lyons*, 461 U.S. 95, 105–106 (1983). There is no dispute that

17  Munoz is still in County custody, and therefore no real dispute that he has standing

18  to seek injunctive relief on behalf of the proposed class[,]"*Peo. of Los Angeles, etc.*

19  *v. Villanueva*, 2022 WL 2189647, *4 (C.D. Cal. 2022), and that now is the law of

20  this case, *see Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) ("The prior

21  decision should be followed unless: " '(1) the decision is clearly erroneous and its

22  enforcement would work a manifest injustice, (2) intervening controlling authority

23  makes reconsideration appropriate,[1] or (3) substantially different evidence was

24  adduced at a subsequent trial.' " *In re Rainbow,* 77 F.3d at 281 (quoting *Hegler v.*

25  *Borg,* 50 F.3d 1472, 1475 (9th Cir.), *cert. denied,* 516 U.S. 1029, 116 S.Ct. 675,

26  133 L.Ed.2d 524 (1995)); *see Leslie Salt,* 55 F.3d at 1393; *Merritt,* 932 F.2d at

27  1320; *Kimball,* 590 F.2d at 771–72."), *overruled on other grounds by Gonzalez v.*

28  *Arizona,* 677 F.3d 383 (9th Cir. 2012) (en banc), which defense counsel fails to

acknowledge, much less to mention.[10] Defense counsel's reliance on his contention that "Defendant never set Munoz' bail," Opp. at 22:5-6, misses and ignores the point that Munoz never contended that defendant set his bail; rather, Munoz's contention is that defendant holds is imprisoning him solely because he is too poor to pay cash bail, and that it is wrongful to imprison a person who is too poor to pay cash bail. Therefore, defendant must release Munoz and the putative class members. It makes no difference at all who set the bail, because Munoz' detention is, contrary to defense counsel's contention, Opp. at 22:6-7, "fairly traceable to Defendant . . . ."

### III.
### ALL OF DEFENDANT'S ARGUMENTS ARE IRRELEVANT AND/OR WITHOUT MERIT; MANY ARE RED HERRINGS AND/OR STRAW MEN.

1. Plaintiffs do not "contend that they are entitled to mandatory injunctive relief," Opp. at 1:3, and expressly stated that "plaintiffs' motion [is one] for a *prohibitory*, preliminary injunction, not ordering defendant to do anything at all, but simply prohibiting defendant from continuing to detain in his pretrial custody any detainee who cannot afford to pay the bail amount set for him . . . ." Mot. at 3:4-8 (emphasis added).[11] Defense counsel intentionally misstates the nature of

---

[10] As set forth above, at footnote 8, this is not the first time that this defense counsel and defense firm have engaged in this same type of ethical misconduct.

[11] That defense counsel hallucinates that this should be a motion for a mandatory injunction because he wants it to be, to increase plaintiffs' burden, is just another one of his straw man fallacies: set up a false premise and then try to knock it down. His contention that the court made prior "repeated pronouncements that Plaintiffs are seeking mandatory injunctive relief (because they unquestionably are)," Opp. at 10:25-27, is an example of a "that was then, this is now" misstatement. What is correct is that plaintiffs do not seek to "order[] defendant to do anything at all." Mot. at 3:5-6; Opp. at 10:27-28. Plaintiffs seek to prohibit defendant from detaining them. And, plaintiffs would have met the higher burden for mandatory injunctions, were they seeking a mandatory injunction. Defense counsel twists this into plaintiffs seeking "an order commanding Defendant to release Plaintiffs from custody . . . ." Opp. at 11:1-2. Plaintiffs are the masters of what they seek, and defense counsel is not. (As once was said: "I'm Chevy Chase and you're not.")

plaintiffs' motion, that is a straw man, and then argues not against the motion, but against the false premise of the motion he has concocted. Again, plaintiffs stated that "Plaintiffs stress that they do not seek a mandatory injunction, to require conduct, but seek only a prohibitory injunction, to prohibit conduct -- to wit, retaining plaintiffs and putative class members in pretrial detention." *Id.* at 4:1-3.

2. Contrary to defense counsel's false contention/premise that plaintiffs "have not exhausted their available state court remedies[,]" Opp. at 1:11-12, first, that is another straw man fallacy, which defense counsel then tries to knock down, there is no exhaustion requirement that a § 1983 plaintiff first go to state court when federal rights are alleged to have been violated, and plaintiffs have satisfied the only exhaustion requirement that there is, under the PLRA, by filing grievances to defendant. Exh. 1 hereto.

3. Plaintiffs do not seek that this court "interject itself into thousands of ongoing state court criminal proceedings" "to second-guess hundreds of judicial officers and thousands of judicial determinations," Opp. at 114-16, a "the sky is falling" argument -- a groundless or absurd conviction that some catastrophic consequence is imminent or underway, and another straw man fallacy, because no judicial determination is, or could, be sought that affects any state court judge, because such could be barred by the *Rooker-Feldman* Doctrine; but that would require that there would have been a final judgment, which a bail setting is not. All that is sought is that defendant not hold in his custody persons who are too poor to pay cash bail, and the bail set for them would stand, but they would be released from defendant's custody without having to post it.

4. This court's prior denials of mandatory injunctive relief, Opp. at 1:18-22, have no bearing at all on the instant request for a prohibitory injunction.

5. Admissible evidence has been submitted. Exhs. to Mot. and Exhs. hereto, and none of it has been rebutted with defendant's evidence. In fact, defendant's evidence as to plaintiffs supports plaintiffs' own evidence.

6. No legal authority supports defense counsel's bold contention that only a three-judge, constitutional court can grant the relief sought, and defendant has not asked that a three-judge court be convened.

7. The California Penal Code has no bearing on this matter.

8. The California bail schedules have no bearing on this matter.

9. Plaintiffs do not attack California's bail system. Another straw man fallacy.

10. Of course, this court should follow the district court's well-reasoned ruling in *Buffin*, which defendant nowhere addresses, except to state falsely that "defendants did not oppose" "a consent decree." Opp. at 2:8-11. That's all defense counsel has to say about that: no analysis of *Buffin* or substantive argument against it. Moreover, plaintiffs herein do not seek any consent decree, and *Buffin* was aggressively opposed by the intervenor California Bail Agents Ass'n, who had an enormous incentive to put up very strong opposition in that case.

11. Plaintiffs' motion is not, contrary to what defense counsel states, "fundamentally identical to their last motion," Opp. at 2:12-13, at least because plaintiffs seek prohibitory, and not mandatory, relief, so that their burden is lower on the instant motion, and all of the plaintiffs have provided declarations that set forth the two things that the prior court stated were necessary but missing, that "During my court appearances, no prosecutor has contended that I am a flight risk, and no prosecutor has contended that I am a danger to the community were I released[,]" and that "during my court appearances, no judge has stated that I am a flight risk or that I would be a danger to the community were I released, and I am

13

being held only because I cannot afford to pay the bail set, or any bail at all." Exhs. to Mot. and to this Reply.

12. Plaintiffs clearly have shown a likelihood of success on the merits. Opp. at 2:13-14.

13. Plaintiffs have submitted abundant, admissible evidence of all of the material facts they need to show both standing and the likelihood of prevailing on the merits, and defendant's contentions that plaintiffs were required to set forth additional facts has no legal support. Defense counsel's statement that "Plaintiffs' evidence consists entirely of declarations from Plaintiffs and other current or former inmates in County jail," Opp. at 2:16-17, is meaningless, as is defense counsel's contention that the declarations "are substantively identical to one another . . . ." *Id.* at 17-18. So what? So, nothing. Plaintiffs do not challenge how their bails were set. (That is for the companion case, *Munoz v. Superior Court*, 2:22-cv-03436-MWF.) Plaintiffs have no burden whatever to show how their bails were set, because that's not in issue here. Plaintiffs, in accordance with Judge Gee's prior order, have set forth all that Judge Gee required. The so-called "conclusory" assertions are of historical facts, and are not "conclusory" in any sense that would make them inappropriate. The declarations accurately set forth admissible facts about each declarant, and that is all that is necessary. Rule 26 has absolutely no bearing on any issue herein. Plaintiffs have developed evidence since the Rule 26(f) meeting, as they had every right to do; besides defense counsel is disingenuous because defendant's own records contain all information about every prisoner he holds, so that defense counsel is shedding crocodile tears. There is no "evidentiary failure." Opp. at 2:27-28.

14. There need be no more information whatever about plaintiffs, except that which was submitted, to wit, that they were or are pretrial detainees in defendant's jails, are held only on condition of payment of cash bail, and that they cannot

afford the bail. Nothing more is required. Again, defendant has all of the information which he complains plaintiffs have not presented in his own records, as he does for all of his thousands of pretrial detainees, as is evidenced among the nearly 400 pages and five pounds of materials that he submitted in opposition to the last motion for preliminary injunctive relief. In effect, defendant makes a sort of reverse dog-in-the manger argument: "I have it, so you need to have it, also.")

15. No information about plaintiffs' criminal proceedings is relevant or required. (And, again, defendant has all this information in his own records. Compare Fed. R. Civ. P. Rule 33(d).)

16. Plaintiffs need not have sought bail reduction, because defendant has no right to hold them on any bail at all, because they can't afford any bail. Parties need not prove a negative, *see In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, 2 F.4th 1199, 1206 (9th Cir. 2021) (citation omitted) (negatives need not be proved when they are difficult to prove), here, that they are unable to afford bail. If they could afford bail, they wouldn't be in defendant's custody. And plaintiffs specifically have stated under penalty of perjury that they cannot afford their bails. Nothing in this regard has changed.

17. It is wholly irrelevant how bail determinations are made in Los Angeles Superior Court: if a detainee is subjected to cash bail she or he cannot afford to pay, the bail both *per se* and *eo ipso* is unconstitutional and illegal, under both federal and state law.

18. Superior Court procedures are wholly irrelevant. As defendant admits, the law on bail has changed, and how the courts react to that is irrelevant. *See Buffin* and *Humphrey*.

19. The only relevant facts are that plaintiffs and class members are held solely  because they can't afford to post the cash bail imposed on them. If that is not the case, then neither a plaintiff nor a class member seeks the relief of her or

1   his release. Defendant must release only those detainees who are held on cash bail

2   that they cannot afford to post; which is all detainees held on cash bail .

3       20. Defendant's contention that issuance of class-wide relief prior to

4   certification cannot be reconciled with the fact that the issuance of class-wide relief

5   prior to certification of a class is strongly disfavored," Opp'n at 2:22-28,[12] and is

6   belied and made nugatory because defense counsel has refused to participate in the

7   L.R. 7-3 conference that plaintiffs are required to hold prior to making a class

8   certification motion. Declaration of Stephen Yagman ("Yagman Decl."), attached

9   to plaintiffs' prior reply on their prior motion for injunctive relief. (On May 3,,

10  2022, Yagman attempted during a telephone call with defense counsel Justin Clark

11  to hold the L.R. 7-3 conference, but Mr. Clark refused to do so, and, as of the

12  present has continued to refuse to do so.) Also, that courts "disfavor" something

13  used as a defense is nonsense. And, this court repeatedly has delayed plaintiffs

14  moving for class certification until a scheduling conference, which repeatedly has

15  been delayed, and now is scheduled for Aug. 29, 2022, and again may be delayed.

16  It is inconsistent and unfair to state that one can't do A until he has done B, but B

17  has been blocked or withheld.

18

19
─────────────

20  [12] *N.B.*: In another large, L.A. County jail class action, in which plaintiffs' counsel herein
    represented the class and defense counsel herein represented the then-sheriff, noting that a class
21  certification motion does *not* go into the decision whether to certify a class, Judge Dean D.
    Pregerson certified the class of floor-sleeper prisoners just seven months (after the motion for
22  class certification had been delayed and obstructed by this same defense firm for five months)
    after the action was filed, *Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) (2:04-08448-DDP),
23  and before making a decision on the merits, two years later, 514 F.Supp. 2d 1201 (C.D. Cal.
    2007), *cert. denied, sub nom. Baca v. Thomas*, 555 U.S. 1099 (2007), when granting summary
24  judgment on the sheriff's unconstitutional *Monell* custom of forcing mail prisoners to sleep on
    the concrete floors, without bunks or any bedding, and of liability in a 500,000-member class
25  action. The same obstructive and sleazy tactics were used, over and over again, in that action to
    delay its trial, in June 2014, for 10 years, which, in the end defense counsel lost. These defense
26  counsel should not be permitted to delay this action, as they succeeded in delaying it by using
27  defense counsel Clark's as an excuse for a delay, with Mr. Clark acting as a stalking horse and
    then not doing the opposition at all, and then the opposition being done by Paul Beach.
28

21. It is of no moment that "Plaintiffs fail to disclose . . . that certain of their declarants are no longer in Defendant's custody or, in fact, that they posted bail." Opp. at 3:1-3. Plaintiffs have no way to know which other prisoners have been released -- but defendant surely knows this, and of the releasees of whom plaintiffs' counsel now knows were released, either the charges against them were dismissed, they were convicted (like Shannon, who was transferred to state prison), they went to treatment facilities, or persons other than them arranged for their bail, but that does not change the fact that they were held on cash bail that *they were too poor to pay*. Plaintiffs do not and never did "imply that Defendant set their bail[.]" Opp. at 3:5.

22. The U.S. Constitution's Supremacy Clause renders irrelevant any state procedures concerning bail. State law rulings that conflict with federal, constitutional rulings run afoul of and are preempted by federal law under the Supremacy Clause in article VI of the U.S. Constitution.[13] *See e.g. Gerling Global Reinsurance Company of America v. Low*, 240 F.3d 739, 752 (9th Cir. 2001). *See also Martinez v. California*, 444 U.S. 277, 284 n. 8 (1980) (state defenses inapplicable to federal claims); *Guillory v. Cnty. of Orange*, 731 F.2d 1379 (9th Cir. 1984) (same).

23. *Buffin*'s two decisions and *Humphrey* all are applicable, and the two *Buffin* rulings are federal common law made pursuant to the federal Constitution's Fourteenth Amendment's Due Process Clause, so that they render subject to preemption under the Supremacy Clause any state laws or procedures to the contrary.

---

[13] "This Constitution, and the laws of the United States which shall be made in pursuance thereof[] . . . shall be the supreme law of the land[] and the judges of every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. Art. VI, ¶ 2. "Laws of the United States which shall be made in pursuance thereof" include the common law made by United States judges, including both the district court judge in the Northern District of California and the three Ninth Circuit judges, all in the *Buffin* cases.

24. The distinction between pre- and post-arraignment stages of a criminal case and County-wide judicial approval of bail schedules simply are irrelevant. Nor are the assertions that "most people arrested in the County of Los Angeles are never required to post bail,"[14] or that "individuals for whom bail is assigned are afforded a multitude of avenues to secure release from jail on their own recognizance and reductions in their bail amounts," prior Opp'n at 2:16-19, pertinent, since the fact of bail at all for persons who cannot afford to pay bail is unconstitutional. And, the Declaration of David Grkinich is insufficient to establish either of these matters as facts because it lacks a proper and full foundation, lacks personal knowledge, and is without any foundation. It simply is crazy to contend that anyone who could afford to pay cash bail would not do so, and the many thousands of pretrial detainees in the jail prove that many thousands of prisoners are held because they cannot afford to pay cash bail.

25. The asserted defects in the complaint, Opp'n at 3:24-28, have no bearing on any issue on the instant motion, and are just an instance of these particular defense counsel's chronic and inappropriate name-calling and diversionary tactics.

26. Defense counsel's suggestion that this action be dismissed, Opp. at 3:19, is baloney: why didn't he make a motion to dismiss? So that he first could churn some fees for himself and his law firm? Instead of doing that he filed an answer.

27. The motion is not "in effect," or in any other way, a habeas petition. Opp. at 3:24. A § 1983 action is not a habeas petition. Habeas has nothing whatever to do with the instant action or the instant motion: only in defense counsel's dreams.

28. *Stack v. Boyle* is out-dated and inapposite, as is the 1991 *Picrin-Peron v. Rison*, because statutes and common law overtook them. *See Timbs v. Indiana,*

---

[14] Then, why are there thousands of pretrial detainee prisoners on bail in the County jail? *See* Exh. 1 hereto.

*supra*. *Stack* and *Picrin-Peron* were pure habeas cases, completely unlike the instant matter. Of course, there is no quotation from or pinpoint citation given by defense counsel for *Stack*, and that is because it stands for nothing in the instant matter. That habeas *might* be a potential remedy for plaintiffs -- which it is not because a habeas would go on forever, is irrelevant, because it is plaintiffs, and not defense counsel, who get to chose their remedy. The only exhaustion requirement here is the PLRA, and plaintiffs have satisfied its only exhaustion requirement, which is to file a grievance. Exh. 2 hereto. Plaintiffs have exhausted their remedies and need not go to state court. (Of course, defense counsel fails to cite *Younger v. Harris*, or seek abstention, because it is inapposite.) All of the plethora of habeas cases defense counsel cites are inapposite, and are yet another, big straw man fallacy.

29. The sky-is-falling argument that Plaintiffs seek a mandatory injunction that would basically shut down the criminal justice system in the largest county in the nation, and release thousands of inmates whom judges of the State of California have adjudged should be detained based on serious criminal charges[,]" prior Opp'n at 3:11-14, is, as President Biden would say, "malarkey." It doesn't matter what state judges have to say when what they say, if they actually say it, is unconstitutional. And, here it is unconstitutional. Those judges are irrelevant here, and may not constitutionally say that if you are poor you must be detained pretrial. The criminal justice system is not there to self-perpetuate itself, yet defendant seems to be arguing just this. The jails are there to hold pretrial detainees on cash bail only when those detainees *can afford to pay the cash bail*, and they not there to detain prisoners who cannot afford to make cash bail.

30. The only relevant facts as to each plaintiff are that he was and is held on cash bail that he could not afford to pay.

31. There is a case or controversy, of which standing is a key element, because defendant is detaining unconstitutionally plaintiffs, just as the San Francisco sheriff did, and who was enjoined from doing so in *Buffin*, so that all plaintiffs had standing to sue and seek injunctive relief when the action was filed. Plaintiffs properly sought immediate, *ex parte* relief when the action was filed, to attempt to avoid the arguments defendant, having delayed the disposition of the request for injunctive relief and class certification, now makes. Having sought and gotten the delay, defendant cannot now be heard to argue that plaintiffs' evidence now is stale or insufficient.

32. Of course, this court always had, and has, subject matter jurisdiction of this action, because it is brought under 28 U.S.C. §§ 1983 and 1343, with subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

32. This is ***not*** a "conditions of confinement" case, but is an illegal confinement case, so that *Greater L.A. Agency on Deafness v. County of Los Angeles*, prior Opp'n at 6:4-12, was wholly inapposite.

33. That the court previously found some plaintiffs' declarations to be stale, operated only as a basis to deny *ex parte* relief, but we now are here on a noticed motion, and the new now-many declarations are admissible evidence. And, defendant has admitted that plaintiff Munoz remains in defendant's custody, which is a judicial admission that is binding on defendant, so that the record is not inadequate.

34. It makes no difference that Superior Court judges set the bails, because it is defendant who held, and holds at least one plaintiff and thousands of putative class members.

35. It is a bad joke, and a gross understatement, for defense counsel to have stated that "it could be that bail determinations made by the Superior Court of the County of Los Angeles . . . may not in every circumstance to perfect[,]" prior

20

Opp'n at 8:1-2, and here it is irrelevant that other state actors are complicit in plaintiffs' and putative class members' detentions, because, again, it is *defendant* who has them in his custody, and thus *he* is a proper defendant in this action. Those other actors' "efforts to comply with all legal mandates," prior Opp'n at 8:4-5, simply is beside the point: it is *defendant* who had in *his* custody plaintiffs and putative class members, and continues to have plaintiff Munoz, and no one else. This cannot be a game of pin the tail on the donkey, and if it is, then defendant is the right donkey.

36. Again, defense counsel argues that "in effect," plaintiffs seek habeas corpus relief, as he did in his prior opposition. Prior Opp'n at 8:15. That habeas also might be a proper remedy does not render unavailable or nugatory the provisional remedy of injunctive relief, and defense counsel cites no case that stands for that proposition, because there is no such case.

37. No case stands for the proposition that a § 1983 plaintiff first must seek relief in state court, and there is no exhaustion requirement. *See e.g. Martinez* and *Guillory*, *supra*. Again, this is not a habeas action, and it is not a conditions of confinement action, and no case stands for the proposition that there is any exhaustion requirement in this § 1983 action, beyond filing a grievance under the PLRA. And, the opposite is the case.

38. This is not a bail proceeding, so that the cases cited on bail are inapposite. And, no exhaustion was required in *Buffin*, the underlying case authority on which plaintiffs principally rely, which defense counsel manages not even to, but only to disparage in passing and not providing any rational basis for this court not to follow. It is a well-reasoned, on-point, and persuasive disposition.

39. The distinction between pre- and post-arraignment bail schedules is wholly irrelevant, prior Opp'n at 9:7-28, and plaintiffs have met and satisfied both the *Winter* and *Stanley* injunctive relief factors, and clearly so.

40. The State of California does not set bails: Superior Court judges fix bails, but that is irrelevant, because it is unconstitutional to set any cash bail at all when a detainee cannot pay any cash bail at all. The California Attorney General's argument and the ruling in *Humphrey* are both instructive and controlling: "No person should lose the right to liberty simply because that person can't afford to post [cash] bail[!]" *In re Humphrey*, 11 Cal. 5th at 142. Really? The court held that pretrial detention "is impermissible unless no less restrictive conditions of release can adequately vindicate the state's compelling interests[,] . . . [because] court's must consider an arrestee's ability to pay . . . when setting [cash] bail . . . ." *Id.* at 152. When a court fails to do that and one ends up in a county jail, the county sheriff who is holding the arrestee-now-prisoner is a proper person against whom to seek of relief, and the *Buffin* case shows that to be so. It is an exceptionally well-reasoned disposition, and it should be followed here.

41. When a sheriff holds arrestees unconstitutionally, he must release them, no matter the reason how they got there or who put them there.

42. From time immemorial at common law, when a government officer has actual custody of a person, that government officer is a proper person to be sued[15] for the release of that person, and defendant cites no cases to the contrary. It is the choice of the person held which remedy to chose. A plaintiff is the master of his complaint.

---

[15] *See e.g.* William Blackstone, *Commentaries on the Laws of England*, Book the Third, p. 129, § 4, ¶¶ 1 & 2: "The writ of *habeas corpus,* [is] the most celebrated writ in the English law. Of this there are various kinds made use of by the courts at Westminster . . . . But the great and efficacious writ in all manner of illegal confinement, is that of *habeas corpus ad subjiciendum; **directed to the person detaining another***, and commanding him to produce the body of the prisoner . . . ." (Emphasis added.) A habeas corpus petition is directed to a court, not to the custodian of a detainee, and it is *not* the only available remedy here. *See supra.* Blackstone here stands only for the proposition that the person holding another is a proper person to be sued. Habeas principles are transferable to § 1983 actions, when that is appropriate.

43. Defense counsel's suggestions that any prior denials of applications or motions for provisional remedies by plaintiffs should control on the instant motion runs afoul of the spirit of L.R. 15-2, which prohibits reference in amended pleadings to "prior[] [or] superseded pleading[s]." Here, there are new facts by way of the prior declarations that Judge Gee held were not sufficiently fulsome having been enlarged to include the matters that Judge Gee stated needed to be included.

44. Plaintiffs object to the court taking judicial notice of anything of which such notice is sought -- that is, their contents, except for the fact that the documents were filed or exist. "Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, *not* whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotation marks and citations omitted and emphasis added). *Accord Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 118 (9th Cir. 1999). "[T]ak[ing] judicial notice [is proper] solely as an indication of what information was in the public realm at the time." *Von Saher*, 592 F.3d at 960.

45. Defendant's evidentiary objections are without merit, as all of the declarations submitted are relevant and material, are on personal knowledge, are properly authenticated, and are not inadmissible hearsay. Judge Gee held that prior, less fulsome declarations would not be stricken: "the Court declines to strike these declarations . . . ." Doc. 41 at 4-5. Defense counsel never have sought any discovery from plaintiffs or their witnesses, yet defense counsel contend that somehow plaintiffs and their declarants have not provided sufficient information to defendant who, in any event, has all the information about all of these people that he ever would need. An exemplar is attached hereto as Exh. 3.

46. Law of the case doctrine, by defendant's admission, does not apply "upon a showing of new evidence." Opp. at 11:10 (quoting *Magnesystems, Inc. v.*

23

*Nikken, Inc.*, 933 F.Supp. 944, 949 (C.D. Cal. 1996). Here, there is new evidence, as required by Judge Gee, to wit, declarations that include the information in all declarants' paragraphs 3 & 4. Therefore, there is no basis for law of the case doctrine.

47. Defense counsel cannot have it both ways, by constructing a Catch 22 for plaintiffs, in which they can't have injunctive relief without first obtaining class certification, and without being able, having very promptly moved for it, to get class certification, because, although L.R. 23-3 provides for obtaining class certification "[a]t the earliest possible time after service of a pleading purporting to commence a class action," plaintiffs have been prevented from doing that at every turn, both by the court and by defense counsel. This is patently unfair. That class-wide relief is "disfavored" without an action having been certified as a class, which "disfavored" is not a legal criterion for anything at all, is meaningless and is authority for nothing at all. (If class-wide relief is unavailable, then the court should order defendant to release all plaintiffs and all of their declarants.)

48. There is no issue in the instant action as to "how Superior Court bail procedures fail to comply with the law regarding the setting of bail," and whether or not *Buffin* addressed that is irrelevant. Opp. at 12:10-16. It is defense counsel's fantasized, concocted, straw man fallacy issue.

49. The unsupported-by-admissible-evidence contention that "most people arrested in the County of Los Angeles are never required to post bail," Opp. at 13:7, is completely irrelevant to any issue before the court.

50. If charges are serious and there is a finding of potential flight or danger to the community, then there is no bail, so that defense counsel's moaning about the "release [of] thousands of inmates whom judges of the State of California have adjudged should be detained based on serious criminal charges," Opp. at 13-14, is meaningless nonsense: when a judge finds that serious criminal charges combined

24

with danger to the community, then there is no bail, so that this contention is beside any point and is irrelevant. The sky simply is not falling, as defense counsel claims it is. Defense counsel simply is perverting the story of Henny Penny, more commonly known in the United States as Chicken Little.

51. As to defense counsel's contention in footnote 6 on page 17 of the Opposition, that "Plaintiffs' blanket concession [and, it is not a 'concession' at all] that they 'do not know this' makes no sense," as to "when they were in court," "who set their bail," *ibid.*, this is wholly irrelevant; and, as exhibit 3's exemplars show, defendant has this information as to every one of the over 10,000 prisoners in defendant's custody. But it makes no difference because, in this action, plaintiffs challenge only the fact that they are in custody because they are too poor to post a cash bond. How that happened is irrelevant.

52. That every declaration is the same is irrelevant. Defense counsel states this as though there were something wrong with it, but he fails to state what that is. And, in that each declarant states that he has "no funds to pay any bail at all," Opp. at 18:13-14; *see* all declarations, this is all they can say. But, in each of their new actions before this court, each one has provided an *in forma pauperis* request, on form CV-60, providing the answers to extensive questions about his financial condition, *etc.*, of which the court is requested to take judicial notice of its own files, to the extent they contain adjudicative facts in the instant action. Fed. R. Evid. Rule 201.

53. Defense counsel's PLRA contentions at pages 19-20 are unfounded baloney. This is not a "conditions of confinement" action, so that the PLRA is inapplicable. It is not an action to "manage prison conditions." Opp. at 19:27. Indeed, no prison at all is involved. It is not a matter that seeks a so-called "'prisoner release order,'" Opp. at 20:1, any more than a habeas corpus petition is an action that seeks a "prisoner release order." Nor is it a matter aimed at having

25

the "effect of reducing or limiting the prison population." *Id*. at1-2. Nor is it a matter that seeks to "direct the release from or non-admission of prisoners to a prison." *Id*. at 2-3. First, no prison at all is involved. Second, none of that is sought. No "prisoner release order" within the scope of the PLRA is sought at all. Simply put, this is not a "conditions of confinement" action. It is not a "prison conditions" case. Defense counsel's citations to 28 U.S.C. § 2284 and 18 U.S.C. § 3626 are, literally, off the wall. Neither section is applicable. They didn't even apply in plaintiffs' counsel's case of *Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005), granting class action status in a Los Angeles County jail, floor-sleeping action, which was defended, and lost, by the same defense counsel herein. *See also Thomas v. Baca*, 514 F.Supp. 2d 1201 (C.D. Cal. 2007), *cert. denied sub nom. Baca v. Thomas*, 555 U.S. 1099 (2009) (granting summary adjudication of the *Monell* issue of the unconstitutionality of forcing jail inmates to sleep on the jails concrete floors without bunks, under both the Fourteenth and Eighth Amendments, and of liability in a 500,000-member class action against the Los Angeles County jail system) (won at trial against Messrs. Beach and Clark, at a June, 2014 trial prosecuted by Marion R. Yagman). Yes, a *Monell* custom may be the "moving force" behind constitutional violations, as it is in the instant matter. If this court buys into the baloney contention that this matter requires a three-judge court, then it is required to request one, under § 2284(b)(1): it would have no choice but to do so. But § 3626 does not provide for this.

54. Plaintiffs never have contended that defendant set plaintiffs bail: that is some other fantasy of defense counsel's. It's not in the complaint and it's not in the motion.

55. Mr. Beach's contention that plaintiffs' counsel did not participate in the L.R. 7-3 telephone meeting in good faith is unfounded. The declarations' dates bear the dates they were drafted and then sent out, not he dates they were executed, and

by June 17, 2022, plaintiffs' counsel had very few, if any of them back or had permission to affix the "/s/" to them from the declarants. But Mr. Beach now has had months to know whom the declarants are and to access any information about them that he might need, which is none. And, L.R. 7-3 kicks in only when a motion is "contemplated," and necessarily counsel would not have amassed all, or any, of the evidence he needed to make the motion, since at the meeting an opponent could agree to the relief requested and then no evidence would need to be gathered or any motion made. So, Mr. Beach's moaning is just moaning. It appears to be evidence that he still is psychologically, negatively impacted by his and Mr. Clark's loss to Ms. Yagman in the *Thomas* action and its trial. In fact, in plaintiffs' June 24 initial disclosures, plaintiffs' counsel provided defense counsel all of the information defendant needed, to wit, "All prisoners who were held in and/or are held in the County jails who are being held on bail that they cannot afford to pay," Beach Decl. at 4, and, by analogy to Fed. R. Civ. P. Rule 33(d), defendant had much better access to this information in his own files than plaintiffs' counsel, who had very little access at all.

## IV.
### CONCLUSION

Plaintiffs adequately and plausibly have satisfied all of the conditions required for a preliminary injunction, defendants' anywhere but here and anytime but now arguments notwithstanding.

Defendant has no legal right to detain on cash bail that they cannot afford any detainee who cannot afford to pay the bail set for her or him. Those detainees are not required to file writs of habeas corpus or to go to other courts, who set their bails, just as the case was in the district court in *Buffin*.

Defendant sheriff's continued unconstitutional pretrial detention of arrestees, whether pre- or post-arraignment, clearly is unconstitutional, and should be enjoined. The motion for a preliminary injunction should be granted.

27

Respectfully submitted,

**YAGMAN + REICHMANN, LLP**

By: _____

**STEPHEN YAGMAN**

//

28

# DECLARATION OF STEPHEN YAGMAN

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiff in this action.

2. I incorporate herein by this reference the facts set forth in the preceding memorandum, which I know from my personal knowledge, in order to render them admissible in evidence.

3. Defense counsel never has sought any discovery from plaintiffs or their prisoner witnesses.

4. On April 3, 2022, I had a telephone conversation with one of the defense counsel, Justin Clark, and tried to raise the issues of L.R. 7-3 conferences regarding a motions for summary adjudication and class certification, but he refused to participate in either conference. He told me he did not know when he would be available for such conferences and that he would write me a letter to provide his available dates for such conferences. As of today, Aug. 12, 2022, I have heard nothing about that subject from Mr. Clark or his co-counsel, Paul B. Beach.

_____
**STEPHEN YAGMAN** 08-12-22